**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

YOULIAN ZHONG,

    Defendant - Appellant.

No. 22-1034

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CR-00084-RM-2)**
_____

Deborah L. Roden, Cheyenne, Wyoming, on the briefs for Defendant-Appellant

Cole Finegan, United States Attorney, and Elizabeth S. Ford Milani, Assistant United States Attorney, Denver, Colorado, on the briefs for Plaintiff-Appellee
_____

Before **EID**, **EBEL**, and **KELLY**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Youlian Zhong appeals her mandatory minimum sentences for crimes related to her participation in a conspiracy to manufacture and distribute large quantities of marijuana.  Zhong contends that the district court clearly erred in finding that she did not prove she was eligible for the statutory safety valve for mandatory minimum

sentences. We hold that Zhong is ineligible for the statutory safety valve because she did not disclose to the Government information sufficient to establish her mens rea for the crimes of which she was convicted, and therefore did not provide "all information and evidence" she had "concerning the . . . offenses" of conviction, as required by 18 U.S.C. § 3553(f)(5). Accordingly, we affirm the district court.

## I.

Youlian Zhong and her husband, Housheng Xian, conspired to grow more than 1,500 marijuana plants, worth hundreds of thousands of dollars, in the basement of their residence on Glencoe Street in Thornton, Colorado. They intended to process the marijuana and to distribute it for sale. In 2018, law enforcement uncovered their scheme, and searched their residence. The smell of marijuana was so strong that officers could smell it immediately upon entering the house. Officers found Zhong and Xian on the main floor of their residence, along with live marijuana plants, marijuana buds, and dozens of pounds of processed and packaged marijuana. Officers also encountered a basement packed with live marijuana plants, grow lights, fans, and soil.

The Government arrested Zhong and Xian and charged them with three counts: (1) conspiring to manufacture and possess with the intent to distribute 1,000 and more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii); (2) manufacturing and possessing with intent to distribute 1,000 or more marijuana plants in violation of the same; and (3) using and maintaining the Glencoe Street

house for the purpose of manufacturing and distributing marijuana in violation of 21 U.S.C. § 856(a)(1).  *See also* 18 U.S.C. § 2.

After a joint trial, a jury convicted Zhong and Xian of all three counts.  Counts 1 and 2 each carried a ten-year mandatory minimum sentence.  *See* 21 U.S.C. § 841(b)(1)(A).

Before the sentencing hearing, Zhong and Xian moved jointly for a non-guideline sentence of time served plus five years of supervised release.  In their motion, Zhong and Xian argued that they met the requirements of U.S.S.G. § 5C1.2(a)(5) and 18 U.S.C. § 3553(f), which together provide a "safety valve" for mandatory minimum sentences.  The parties agreed that Zhong and Xian satisfied all but one of the requirements of § 3553(f).  But the Government contested whether Zhong and Xian had "truthfully provided to the Government all information and evidence the defendant[s] ha[d] concerning the offense or offenses that were part of the same course of conduct."  18 U.S.C. § 3553(f)(5).  Accordingly, in support of their motion, Zhong and Xian filed a joint proffer letter, which they claimed "truthfully provid[ed] to the Government all information [Zhong and Xian] ha[d] concerning the offenses of conviction."  R. Supp. Vol. I at 32–35; *see id.* at 29–31.[1] Zhong's and Xian's joint proffer letter largely detailed the couple's actions during the relevant period of time.

---

[1] Although one copy of the letter was filed by Zhong's attorney, and the other by Xian's, the two copies of the joint proffer letter were substantively identical, and each purported to speak for both Zhong and Xian.

The joint proffer letter also contained some information about Zhong's and Xian's states of mind. Zhong and Xian admitted that they "knew that suspicious activities were going on," and "knew that people were coming in and out of the home" where they were staying. R. Supp. Vol. II at 34. They also told the Government that they "believed that there was marijuana growing in the home[] because of things they saw in the home like the large fans and large trash bags." *Id.* They admitted that they "also knew that people came and went from the home, had keys to access the home and moved things around," and in particular, "knew that the large trash bags in the kitchen would be taken away and then other bags would appear." *Id.* Accordingly, "[i]t was apparent to both Mr. Xian and Mrs. Zhong during the time . . . that there was something illegal happening that involved growing marijuana." *Id.* Zhong and Xian also explained that "[t]he reason that the couple knew there was marijuana in the basements was because of the suspicious activities, specifically: (1) they were living for free; (2) people were coming in and out of the home with keys; (3) items in the home would be moved around and the people who came and went took things and brought things related to growing marijuana; and (4) there were large fans and large trash bags in the homes." *Id.* Accordingly, they took "full responsibility that they knew there was marijuana growing in the homes and knew that they were living in the homes for free to in some way assist the people who were growing the marijuana." *Id.*

Zhong's and Xian's joint proffer letter also disclaimed any knowledge or intent beyond what they outlined. For instance, they told the Government that they

"did not want to ask questions," and that "[t]here was never an explicit conversation about the arrangement." R. Supp. Vol. II at 34. Zhong and Xian claimed that, although they did favors for one of their hosts, "[n]one of these errands were drug-related as far as the couple knew," and they only "would do what they were asked out of respect . . . as new immigrants to town." *Id.* at 33. They told the Government they "wish[] they had more information that could be provided and wish[] they knew more information." *Id.* at 34. However, they claimed "that they deliberately tried to be ignorant of the specifics of what was going on." *Id.*

In response to the joint proffer letter, the Government requested some additional information from Zhong and Xian prior to the sentencing hearing. In particular, the Government questioned whether Zhong and Xian provided all information necessary to prove that they intentionally assisted in marijuana trafficking or agreed to participate in marijuana trafficking, as convicted. In response, Zhong and Xian submitted a joint addendum with some additional information about their offenses of conviction. In response to the Government's mens rea questions, Zhong and Xian said that "[t]hey knew there was marijuana trafficking going on around them and while did not have an explicit discussion regarding living for free in the houses, knew or most definitely should have known that living for free was a benefit they were getting as a result of their assistance in the marijuana trafficking." R. Vol. II (sealed) at 57.

The district court heard testimony from Zhong and Xian at the sentencing hearing. The court considered such testimony for the purpose of evaluating the

5

credibility and consistency of Zhong's and Xian's joint proffer letter and addendum, but ultimately reviewed the written materials on their face.  *See* 18 U.S.C. § 3553(f)(5) (requiring a defendant to provide the Government with all information "not later than the time of the sentencing hearing").

In an oral ruling, the district court denied Zhong's and Xian's motion for a non-guideline sentence.  For numerous reasons, the district court concluded that Zhong and Xian did not meet their burden to prove by a preponderance of the evidence that their written responses to the Government were truthful and complete as required by § 3553(f)(5).  The district court largely rested on findings that Zhong's and Xian's joint proffer letter and addendum were not credible and self-contradictory, and that their credibility was further undermined by testimony at the sentencing hearing.

The district court did not rely on one defect alone, and remarked that there were "so many layers" and "so many levels" to the discrepancies in Zhong's and Xian's joint proffer letter and addendum.  For instance, the district court found not credible Zhong's and Xian's account of why they came to the United States; their description of how they became involved in the conspiracy; their claim that they did not see members of the conspiracy in their residence; their representations about when they lived where; their proffer that, although they should have known marijuana was being grown in their residence, they did not necessarily know; and inconsistent testimony and written materials about whether and how Zhong and Xian paid the unusually large utility bills from their residence.  The district court found

6

that Zhong's and Xian's proffer letter and addendum "either make no sense, were directly contradicted by the testimony" they offered at the hearing, "or are impossible to understand." R. Vol. III at 220–21; *see also id.* at 221 ("I don't accept this explanation at all."). The district court also observed that "the testimony and/or the letter is plainly, unambiguously, and completely in contradiction to the verdict," because Zhong's and Xian's admitted mental states gave them "knowledge," but did not "give [them] intention" as convicted. *Id.* at 162. However, the district court declined to reach the question of whether Zhong and Xian were disqualified on that basis. *See id.* at 163 ("Let's stop and say we don't have to reach that – if we do, it's over . . . ."). Instead, the district court rested on the internal contradictions in Zhong's and Xian's proffer letter and addendum.

Because Zhong and Xian were not eligible for safety-valve relief, the district court sentenced Zhong and Xian to the mandatory minimum of 120 months in prison on Counts 1 and 2, and to 48 months in prison on Count 3, to run concurrently.

Zhong timely appealed.[2]

## II.

"A defendant has the burden to prove that he or she qualifies for the safety valve by a preponderance of the evidence." *United States v. Cervantes*, 519 F.3d 1254, 1256 (10th Cir. 2008). "We review a district court's factual determination on safety-valve eligibility for clear error, including whether a defendant has provided

---

[2] Xian also appealed. His appeal, No. 22-1030, is resolved in a separate disposition, released concurrently with this opinion.

the government with complete and truthful information." *Id.* We will find a district court's factual findings clearly erroneous only if they are "without support" or if they "leave us with a definite and firm conviction that they are incorrect." *Id.* This deferential standard of review reflects the fact-dependent nature of the safety-valve analysis and the district court's role in evaluating a defendant's credibility and weighing the evidence. *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1129 (10th Cir. 2003).

### III.

Before the sentencing hearing, a defendant seeking safety-valve relief must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct." 18 U.S.C. § 3553(f)(5). "'All' means all." *Allen v. Env't Restoration, LLC*, 32 F.4th 1239, 1244 (10th Cir. 2022). When a jury convicts a defendant of an offense with a mens rea element, the jury convicts the defendant of having certain information. And, as we have previously concluded, a district court may not grant a defendant's request for safety-valve relief when to do so would "directly undermin[e] the jury's verdict." *United States v. Montijo-Dominguez*, 771 F. App'x 870, 877 (10th Cir. 2019) (unpublished) (Kelly, J.). Therefore, a district court must find that a defendant who has not provided the minimum information necessary to demonstrate his or her own mens rea has not provided "all information" he or she has concerning the offense. In other words, a defendant who is convicted of having a certain state of

8

mind must provide information about that state of mind to the Government in order to qualify for safety-valve relief under § 3553(f)(5).

Zhong did not truthfully provide to the Government all information she had concerning the offense prior to the sentencing hearing, because she did not provide information sufficient to prove that she possessed the mens rea for the crimes of which she was convicted.

For Count 1, the Government alleged that Zhong "did knowingly and intentionally combine, conspire, confederate, and agree, with interdependence, to manufacture and possess with the intent to distribute 1000 and more marijuana plants," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii).  R. Vol. I at 265. The jury was instructed that, to find Zhong guilty of Count 1, the Government must have proved beyond a reasonable doubt that Zhong "knew the essential objective of the conspiracy" to "violate the federal drug laws," and that she "knowingly and voluntarily involved . . . herself in the conspiracy."  *Id.* at 271.  In particular, the jury was instructed that "proof is not sufficient if it merely shows that [Zhong] knew about the existence of the conspiracy or [was] associated with members of the conspiracy," and that "the evidence must show [Zhong] knowingly joined the conspiracy with the intent to advance its purposes."  *Id.* at 272.  The jury was further instructed that for Zhong to have done something "knowingly," she must have done it "voluntarily and intentionally, and not because of mistake or accident."  *Id.* at 281.

For Count 2, the Government alleged that Zhong "did knowingly and intentionally manufacture and possess with intent to distribute 1000 and more

9

marijuana plants, a Schedule 1 controlled substance, and did knowingly and intentionally aid, abet, counsel, command, induce, and procure the same," also in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii).  R. Vol. I at 265.  The jury was instructed that Count 2 required that Zhong "knowingly or intentionally possessed a controlled substance as charged," and that she "possessed the substance with the intent to distribute it."  *Id.* at 274.  As with Count 1, the jury was instructed on what it means to commit an act "knowingly," that is, "voluntarily and intentionally, and not because of mistake or accident."  *Id.* at 281.

For Count 3, the Government alleged that Zhong "did unlawfully and knowingly use and maintain a place located at 12662 Glencoe St, Thornton Colorado, for the purpose of manufacturing and distributing marijuana, a Schedule I controlled substance, and did knowingly and intentionally aid, abet, counsel, command, induce, and procure the same," in violation of 21 U.S.C. § 856(a)(1).  R. Vol. I at 265–66.  To convict Zhong of Count 3, the jury was required to find that she "maintained a place . . . for the purpose of manufacturing or distributing marijuana," and that she "knew that the place was used for such a purpose."  *Id.* at 276.  The same instruction regarding "knowing[]" acts again applied.  *Id.* at 281.

The district court also instructed the jury on aider and abettor liability for Count 2 and Count 3.  The jury was instructed that, to find Zhong guilty as an aider or abettor, the jury must be convinced that Zhong "intentionally associated . . . herself in some way with the crime and intentionally participated in it as . . . she would in something . . . she wished to bring about"; that is, that Zhong

10

"consciously shared in the other person's knowledge of the underlying criminal act and intended to help him or her."  R. Vol. I at 278.

When the jury convicted Zhong of all three counts, it necessarily found, beyond a reasonable doubt, that Zhong had a certain mens rea for each crime.  For Count 1, the jury convicted Zhong of participating in the conspiracy not only "knowingly," but also "intentionally," and "voluntarily," and of joining the conspiracy "with the intent to advance its purposes."  R. Vol. I at 265, 271, 272, 281.  For Count 2, the jury convicted Zhong of either "intentionally" manufacturing and possessing marijuana herself, and of doing so "with intent" to distribute it, or it convicted her of aiding and abetting the crime by "intentionally" associating herself with it and "intentionally" participating in it, with the "conscious[]" knowledge of the crime and "inten[t]" to help its principal.  *Id.* at 265, 274, 278, 281.  And for Count 3, the jury convicted her of "knowingly us[ing] and maintain[ing] a place . . . for the purpose of manufacturing and distributing marijuana," and of doing so "voluntarily and intentionally," or of "intentionally" aiding and abetting such crime.  *Id.* at 265–66, 276, 278, 281.

Zhong's joint proffer and addendum were not sufficient to show the mens rea for any crime of which the jury convicted her.  Zhong admitted to knowing there was suspicious and illegal activity in her home involving marijuana.  She even admitted to knowing that her role, living in the house, would in some way assist those growing and distributing the marijuana.  But she stopped short of admitting that she intended to join the conspiracy, or that she did so voluntarily, or that she joined with the intent

11

to advance the conspiracy's purposes. She disclaimed any intent voluntarily to aid or to abet the principals of the crimes of conviction—much less intent to commit the crimes directly. Because Zhong was convicted of crimes of intent, and because she did not provide information sufficient to show her intent, she did not provide "all information" within the meaning of § 3553(f)(5).

The closest Zhong got to admitting her mens rea was in her addendum to her joint proffer letter. In response to Zhong's joint proffer, the Government notified Zhong that it did "not think that the facts in [her] letter make out the elements of aiding and abetting liability or co-conspirator liability." R. Vol. II (sealed) at 57. The Government explained that the "letter admits that [Zhong and Xian] were aware that some of their actions might be assisting marijuana trafficking and/or that marijuana trafficking was occurring around them," but "does not admit that they intentionally assisted in marijuana trafficking (for aiding and abetting) or agreed to participate in marijuana trafficking (for co-conspirator liability)." *Id.* Accordingly, the Government warned Zhong that "to agree that [the proffer] letter is sufficient would require [the Government] to essentially stipulate that [Zhong and Xian] were wrongfully convicted." *Id.* In response, Zhong told the Government that she and Xian "knew there was marijuana trafficking going on around them and while [they] did not have an explicit discussion regarding living for free in the houses, knew or most definitely should have known that living for free was a benefit they were getting as a result of their assistance in the marijuana trafficking." *Id.*; *see also id.* ("[I]f it

was not obvious, they most definitely should have known" that the garbage bags in their kitchen "contained marijuana.").

Even Zhong's addendum is insufficient to show the mens rea for any crime of conviction. Even if Zhong "knew there was marijuana trafficking going on around them," and "knew . . . that living for free was a benefit they were getting as a result of their assistance in the marijuana trafficking," that would not be the same as intentional, voluntary conduct, undertaken with the intent to advance the purposes of the marijuana-growing conspiracy. R. Vol. II (sealed) at 57. Even if we gave the word "knew" an unjustifiably expansive reading, Zhong did not even admit that she "knew": she admitted only that she *either* "knew *or* . . . should have known" that she was living for free in exchange for her assistance. *Id.* (emphasis added). As we have explained, the "should have known" language "is equivalent to a negligence standard"—not the higher mentes reae of knowledge, purpose, or intent. *United States v. Kalu*, 791 F.3d 1194, 1208 (10th Cir. 2015). Accordingly, a jury which finds that a defendant "knew or should have known" the facts underlying her crime may convict her of a crime requiring negligence, but not a crime requiring recklessness, knowledge, purpose, or intent. *Id.* at 1208–09. By telling the Government that she knew *or* should have known, Zhong admitted, at best, that she had the necessary mens rea *or* she did not; that she committed the crimes of conviction *or* she did not.

Accordingly, Zhong did not provide the Government with all of the information the jury found that she had. If the district court had found that Zhong

provided the Government with all the information she had concerning her offenses of conviction, it would have found that Zhong had no more information concerning her own mens rea on any offense. In other words, the district court would have found Zhong to have proved by a preponderance of the evidence that she "should have known" the facts underlying each of her crimes, but that she did not necessarily intend to commit them. But the jury found, beyond a reasonable doubt, that Zhong did possess the necessary mens rea for each count, and therefore that she did have intent. Zhong cannot have disproved by a preponderance of the evidence what the jury found true beyond a reasonable doubt.

For her part, Zhong says little. She acknowledges the issue in her opening brief. Aplt. Br. at 6 ("[T]he government alleged that the [proffer] letter did not admit Ms. Zhong intentionally assisted in marijuana trafficking in relation to the aiding and abetting charge, nor did Ms. Zhong admit to agreeing to participate in marijuana trafficking for co-conspirator liability."). But despite a lengthy argument in the Government's brief on appeal, *see* Aple. Br. at 16–20, she makes no response. Indeed, Zhong entirely fails to dispute any of the premises underlying our ruling: that a defendant must provide the Government "all information" she has; "all" means *all*; a defendant's state of mind for the offenses of conviction is "information"; it is information the defendant "has"; and Zhong did not provide such information in this case. Accordingly, it was not clearly erroneous for the district court to conclude that Zhong failed to provide the Government with all the information she had concerning the offense of conviction.

**IV.**

Zhong does argue, on several other grounds, that the district court clearly erred in finding that she was not eligible for safety-valve relief. First, Zhong argues that the district court clearly erred in considering facts that she claims did not relate to her offense of conviction. Next, Zhong argues that the district court improperly relied on speculation regarding whether her handwriting matched checks paying utility bills at her residence. Zhong also argues that the district court clearly erred by failing to consider potential cultural differences; for instance, the possibility that a Chinese National may not recognize the smell of marijuana. Finally, Zhong argues that the district court clearly erred by failing to consider the underlying policy purpose of § 3553(f)(5).

We need not reach Zhong's other arguments for reversal. "[E]ven where the lower court reached its conclusions from a different or even erroneous course of reasoning," this Court "will affirm the rulings of the lower court on any ground that finds support in the record," and the record here requires us to affirm the district court. *United States v. Davis*, 339 F.3d 1223, 1227 (10th Cir. 2003). Even if the district court erred in any or all of the ways Zhong argues, none of these other arguments affects our conclusions that she failed truthfully to disclose her mens rea for her crimes of conviction to the Government, and therefore that the district court did not clearly err in denying her safety-valve relief.

## V.

If a jury convicts a defendant of a crime involving mens rea, the defendant must provide the Government with information sufficient to prove such mens rea in order to meet the requirement that she "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense . . . ."  18 U.S.C. § 3553(f)(5).  The phrase "all information" means "all information," and that includes a defendant's mens rea.  Because Zhong did not provide the Government with information sufficient to prove the mens rea required for the crimes of conviction, she has not met her burden to prove by a preponderance of the evidence that she qualifies for safety-valve relief.  The district court did not clearly err in so concluding.

**AFFIRMED.**